**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**CAPITAL SERVICES OF NEW YORK, INC.,**

                        Plaintiff,

                v.                                    1:00-CV-873
                                                    (FJS/GHL)

**E-POXY INDUSTRIES, INC.; DONALD
DZEKCIORIUS; and EPOXY TECHNOLOGIES, LLC,**

                        Defendants.

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **CARTER, CONBOY, CASE,** <br> **BLACKMORE, MALONEY & LAIRD, P.C.** <br> 20 Corporate Woods Boulevard <br> Albany, New York 12211 <br> Attorneys for Plaintiff | **JAMES A. RESILA, ESQ.** |
| **WHITEMAN OSTERMAN & HANNA LLP** <br> One Commerce Plaza <br> Suite 1900 <br> Albany, New York 12260 <br> Attorneys for Plaintiff | **JOHN J. HENRY, ESQ.** <br> **MARGARET J. GILLIS, ESQ.** <br> **WILLIAM S. NOLAN, ESQ.** |
| **HINMAN STRAUB P.C.** <br> 121 State Street <br> Albany, New York 12207 <br> Attorneys for Defendants E-Poxy Industries, <br> Inc. and Donald Dzekciorius | **JAMES T. POTTER, ESQ.** |
| **FLINK, SMITH & ASSOCIATES, LLC** <br> 23 British American Boulevard <br> Latham, New York 12110 <br> Attorneys for Defendant Epoxy <br> Technologies, LLC | **JAY A. SMITH, ESQ.** |

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Remaining in this action are (1) Plaintiff's Lanham Act claims under 15 U.S.C. § 1125(a) (relief and attorney's fees only), fraudulent conveyance claims under New York Debtor and Creditor Law §§ 273, 273-a, 274, 276, and state law claims for product disparagement, trade libel, and intentional interference with prospective economic relations; (2) Defendants E-Poxy Technologies, LLC's ("E-Poxy"), Dzekciorius', and Epoxy Technologies, LLC's ("EEM") Lanham Act counterclaims under 15 U.S.C. §§ 1114, 1125(a) and state law interference with prospective economic advantage counterclaims; and (3) Defendants E-Poxy's and Dzekciorius' breach-of-contract counterclaim.

Currently before the Court is Plaintiff's request that the Court impose sanctions on Defendants Dzekciorious and E-Poxy for failure to pay their contempt judgment. Specifically, Plaintiff seeks an order (1) requiring Defendants Dzekciorius and E-Poxy to pay (a) the full $19,795.49; (b) interest on that amount since May 22, 2002, pursuant to 28 U.S.C. § 1961; and (c) Plaintiff's reasonable attorney's fees and expenses for seeking, preparing for, and appearing at the July 17, 2005 hearing and (2) precluding Defendants Dzekciorius and E-Poxy from filing any papers in the further prosecution of their counterclaims until they have made all these payments.

### II. BACKGROUND

Plaintiff and Defendant EEM are, and Defendants E-Poxy and Dzekciorius were,

involved in the construction supply business. At issue in this case are three polymer foams that Zotefoams, PLC ("Zotefoams") manufactures and that are used to join concrete and similar materials (e.g., in expansion joints). Two of the products bear the trademark Evazote®, which Zotefoam owns. The third product bears the trademark MetaZeal®, which Plaintiff owns. One Evazote® product, which Plaintiff markets as Evazote® Grey and which Defendants E-Poxy and Dzekciorius marketed as Evazote® 50,[1] contains carbon black, which purportedly acts as an ultra violet ("UV") inhibitor. Defendants E-Poxy and Dzekciorius marketed, and Defendant EEM markets, the other Evazote® product as Evazote 380®, which contains a different purported UV inhibitor. Finally, Plaintiff markets MetaZeal®, which has a different composition from, but similar characteristics to, the other two products.

In 1997, Defendant E-Poxy brought suit in state court against Plaintiff and two individuals affiliated with Plaintiff alleging unfair competition, theft of trade secrets, and trademark and copyright infringement. Plaintiff and the other defendants in that case removed the action to this Court. The parties reached a settlement in September 1997 ("1997 Settlement").

Plaintiff commenced the instant action against Defendants E-Poxy and Dzekciorius on June 5, 2000, asserting all the claims that are currently before the Court other than fraudulent conveyance. On June 9, 2000, Judge Kahn concluded that Plaintiff was likely to succeed on its breach of settlement agreement and 15 U.S.C. § 1125(a) claims and entered a temporary restraining order enjoining Defendants E-Poxy and Dzekciorius from engaging in certain

---

[1] Defendant EEM states that it does not actively market Evazote® 50 but supplies the product when a customer specifically asks for it.

marketing practices. *See Capital Servs. of N.Y., Inc. v. E-Poxy Indus., Inc.*, 196 F.R.D. 11, 12-13 (N.D.N.Y. 2000). Specifically, he found to be literally false a statement on a trade show display that Evazote 380® is "'the only Evazote with UV resistance'" and a "'Notice'" that "suggests that Plaintiff's product failed under UV exposure in various projects in which Plaintiff had not participated in any way whatsoever." *Id.* He also found that the use of two letters from Zotefoams ("Lewsey Letters") in a trade show display violated the terms of the 1997 Settlement. *See id.* at 12.

On October 19, 2000, this case was reassigned to Judge McAvoy. *See* Dkt. No. 17.

On November 16, 2000, Plaintiff moved the Court for a preliminary injunction. Defendants E-Poxy and Dzekciorius cross-moved for a preliminary injunction on November 30, 2000.

On December 13, 2000, Defendant E-Poxy and Defendant EEM (at that time, Epoxy Technologies, LLC) entered into an asset purchase agreement. Under that agreement, Defendant EEM purchased substantially all of Defendant E-Poxy's assets and assumed the principal balance of a debt, in the amount of $617,630.18, that Defendant E-Poxy owed KeyBank, National Association ("KeyBank"). Defendant Dzekciorious' son, Joel Dzekciorious, controls and is the principal shareholder of Defendant EEM.

On January 26, 2001, Judge McAvoy issued a Decision & Order granting in part Plaintiff's motion and denying Defendants E-Poxy's and Dzekciorius's cross-motion for preliminary injunctive relief. *See* Dkt. No. 54. Specifically, he concluded that Defendants E-Poxy and Dzekciorius were enjoined from

> (1) distributing or otherwise using the Flyer and Notice as well as other advertising materials that depict installations of Defendants' product that

> have suffered damage and which falsely claim that the installations depicted are installations of Plaintiff's UV-degraded product; (2) making representations to customers or potential customers that their product, Evazote 380, is the only Evazote with UV resistance and/or UV stability; (3) using the Lewsey Letters in trade show displays; and (4) representing that the results of testing in the Porta-cure machine are representative of normal UV weathering in any advertisements or other marketing efforts . . . .

*See id.* at 25.

On June 22, 2001, Plaintiff filed an amended complaint that added EEM as a Defendant and asserted a fraudulent conveyance claim.

On November 20, 2001, Judge McAvoy found Defendants E-Poxy and Dzekciorius in willful contempt of Court for violating the Court's January 26, 2001 preliminary injunction and ordered them to pay Plaintiff's reasonable legal costs in bringing the contempt motion. *See* Dkt. No. 103. However, in light of the procedural posture of the case and the parties' failure to brief the issue, the Court declined to decide whether Defendant EEM is Defendant E-Poxy's successor-in-interest. *See id.* at 20-22.

On March 28, 2002, this case was reassigned to Judge Munson. *See* Dkt. No. 113.

On May 21, 2002, Judge McAvoy issued an Decision & Order, in which he, *inter alia*, ordered Defendants Dzekciorius and E-Poxy to pay Plaintiff $18,500.00 in legal fees and $1,295.49 in costs and disbursements. *See* Dkt. No. 118 at 16.

On June 1, 2002, Judge Munson entered a Judgement that provided that Plaintiff recover $18,500.00 in legal fees and $1,295.49 in costs and disbursements against Defendants Dzekciorious and E-Poxy. *See* Dkt. No. 119 at 2.

On March 4, 2004, this case was reassigned to Chief Judge Scullin. *See* Dkt. No. 158.

On March 7, 2005, Defendant EEM notified the Court of its intent to sell its assets and certain liabilities, expressly excluding potential liabilities arising from this litigation, to Chase Corp., a Massachusetts company. *See* Dkt. No. 169.

On March 31, 2005, the Court adopted in its entirety Magistrate Judge Lowe's February 18, 2005 Report and Recommendation. *See* Dkt. No. 179 at 18. The Court (1) denied Plaintiff's motion and Defendant EEM's cross-motion for summary judgment with respect to the issue of successor liability; (2) denied Plaintiff's motion for summary judgment to set aside the transfer of assets from Defendant E-Poxy to Defendant EEM; (2) made permanent against all Defendants Judge McAvoy's preliminary injunction of January 25, 2001; (3) granted Plaintiff's motion for summary judgment with respect to its claims that Defendants E-Poxy's and Dzekciorius' statements about carbon black and UV resistance, the MetaZeal® and "recall" notice, and the UV curing machine violated the Lanham Act; (4) denied Plaintiff's motion for summary judgment with respect to its claims that Defendant EEM violated the Lanham Act; (5) granted Plaintiff's request that the Court hold a bench trial to determine its relief for Defendants E-Poxy's and Dzekciorius' Lanham Act violations; (6) granted Plaintiff's motion for summary judgment with respect to an award of reasonable attorney's fees for Defendants E-Poxy's and Dzekciorius' Lanham Act violations but postponed determination of the amount of the award until the final resolution of the entire case; (7) denied Plaintiff's motion for summary judgment dismissing Defendant E-Poxy's and Dzekciorius' Lanham Act counterclaims under 15 U.S.C. §§ 1114, 1125(a) and state law unfair competition, interference with prospective economic advantage, and breach-of-contract counterclaims; (8) denied Plaintiff's motion for summary

judgment dismissing Defendant EEM's Lanham Act counterclaims under 15 U.S.C. §§ 1114, 1125(a) and state law unfair competition and interference with prospective economic advantage counterclaims; (9) granted Plaintiff's motion for summary judgment with respect to Defendants' New York General Business Law §§ 349, 368-*l* counterclaims; (10) denied Plaintiff's motion for summary judgment with respect to Defendants' affirmative defenses; (11) dismissed as moot Plaintiff's New York General Business Law § 360-*l* and breach of settlement agreement claims; and (12) denied Plaintiff's motion and Defendant EEM's cross-motion for summary judgment with respect to Plaintiff's product disparagement, trade libel, and intentional interference with prospective economic relations claims.

On July 17, 2005, the Court held a hearing regarding Defendants Dzekciorius' and E-Poxy's failure to pay their contempt judgments. During that hearing, the Court directed Defendant Dzekciorius to submit his tax returns and the bill of sale from the sale of Defendant E-Poxy's assets to Defendant EEM.

In compliance with the Court's instructions, on July 20, 2005, Defendants Dzekciorius and E-Poxy submitted the bill of sale from the sale of Defendant E-Poxy's assets to Defendant EEM. *See* Dkt. No. 188 at Exhibit "B." On the same date, Defendant Dzekciorius submitted his 2002 tax return to the Court for *in camera* review. He states that he has been unable to locate his 2003 return and that the accountant who prepared that return has since died.[2] *See* Dkt. No. 188 at 4.

The trial of this matter is scheduled for November 7, 2005.

---

[2] At the hearing, Defendants Dzekciorius' and E-Poxy's counsel stated that the accountant was on vacation. *See* Dkt. No. 187 ("Hearing Transcript") at 14:22-23.

### III. DISCUSSION

**A.     Legal standard**

"A contemnor may be excused from the burden of a civil contempt sanction if it lacks the financial capacity to comply; but the contemnor bears the burden of production in raising such a defense." *Paramedics Electromedicina Comercial, LTDA v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 658 (2d Cir. 2004) (quoting *United States v. Rylander*, 460 U.S. 752, 757, 103 S. Ct. 1548, 75 L. Ed. 2d 521 (1983)). "[A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) (citations omitted). "[T]he alleged contemnor's burden is to establish his inability clearly, plainly, and unmistakably." *See id.*

**B.     The Court's prior decisions**

Defendants Dzekciorius and E-Poxy have been aware of their obligation to pay Plaintiff $19,795.49 since they received Judge McAvoy's May 21, 2002 Decision & Order. *See* Dkt. No. 118.

The earliest date that they indicate that the Court addressed their failure to pay the contempt judgment is September 30, 2002, during a conference before Judge Munson. The docket entry for that date states, in pertinent part, that "[c]ounsel advises court of positions relative to pending contempt sanction and charge as well as possible hearing dates for further

hearings and trial of this matter." *See* Dkt. No. 154. This entry also indicates that Judge Munson set a trial date of February 18, 2003. *See id.* Plaintiff's counsel submitted a letter to the Court on April 28, 2005, in which she states that "[i]n 2002, plaintiff requested a hearing on defendants' failure to pay. At a conference September 30, 2002 [sic], the Honorable Howard G. Munson advised that the hearing would occur when the case was tried . . . ." *See* Dkt. No. 180 at 2.

Defendants Dzekciorius and E-Poxy assert that Plaintiff also raised the issue of their failure to pay the contempt judgment before Judge Munson on January 27, 2003. The docket entry for that date states, in pertinent part, that "[c]ourt and counsel meet and review pending contempt and sanction motions and further hearing and trial of this matter. Judge Munson directs trial date of September 8, 2003 . . . ." *See* Dkt. No. 156. Defendants Dzekciorius and E-Poxy' counsel asserts that "[t]his entry refreshes my recollection that the issue of the defendants' inability to pay the contempt sanction was raised again before Judge Munson, who refused to consider plaintiff's request to hold a hearing on the contempt sanction prior to the time of trial." *See* Dkt. No. 188 at 2.

Defendants Dzekciorius and E-Poxy state that Judge Munson also addressed the issue of their failure to pay the contempt judgment during a September 30, 2003 conference. There is no docket entry for that date. In fact, there are no docket entries between March 31, 2003, and March 4, 2004. *See* Dkt. No. 157-58. However, Defendants Dzekciorius' and E-Poxy's counsel claims that his time records reflect a conference on September 30, 2003. *See* Dkt. No. 188 at 2. In support of this claim, he has submitted a letter, dated October 1, 2003, that he wrote to Hanover Insurance, Defendant E-Poxy's insurer who Defendants Dzekciorius and E-Poxy assert has disclaimed coverage. The letter states, in pertinent part, that "plaintiff's counsel was

pressing for a hearing on the issue of Donald Dzekciorius' ability to pay a contempt sanction. That issue has been deferred until the time of trial." *See id.* at Exhibit "A."

The record generally supports Defendant Dzekciorius' and E-Poxy's argument that Judge Munson determined that a hearing regarding their failure to pay the contempt judgment should occur at the same time as the trial of this matter. However, they have pointed to nothing in the record that indicates that the Court ever relieved them of their obligation to pay the contempt judgment.

**C.    Defendant Dzekciorius' and E-Poxy's ability to pay**

Defendant Dzekciorius and E-Poxy contend that are unable to pay their contempt judgment. Before addressing their present financial condition, the Court notes the impropriety of their raising this issue at this time. The memorandum of law that Defendants Dzekciorius and E-Poxy filed in opposition to Plaintiff's application for attorney's fees after Judge McAvoy had found them to be in contempt contains *no* discussion of their purported inability to pay. *See* Dkt. No. 107. If their position is that they have been unable to pay the contempt judgment at all times since the Court issued it, they should have presented evidence of their inability to pay to Judge McAvoy as part of their opposition to Plaintiff's application for attorney's fees.

With respect to Defendants Dzekciorius' and E-Poxy's present financial condition, Defendant Dzekciorius testified at the July 17, 2005 hearing that he had IRAs worth about $70,000. *See* Hearing Transcript at 16:3. His attorney classifies these IRAs as "exempt assets." *See id.* at 4:14-15. Presumably he means that the IRAs would be exempt from Defendant Dzekciorius' estate in a bankruptcy proceeding. *See In re Dubroff*, 119 F.3d 75, 80 (2d Cir.

1977). Regardless, he has not presented an argument as to why the Court should exempt his IRAs from its consideration of his alleged inability to pay the contempt judgment. Nor has he presented any information about the nature of his IRAs, although he did testify that he is sixty-five years old. *See* Hearing Transcript at 8:22. Furthermore, his 2002 tax returns reflect that he received $16,639 in IRA distributions during 2001. Therefore, it appears that Defendant Dzekciorius has access to the IRAs and could use funds therefrom to pay the contempt judgment.

Defendant Dzekciorius' tax returns indicate that, during 2002, he lost an amount in his consulting business greater than the amount of the contempt judgment. Since he testified at the hearing that he has only made $1,500 to $2,000 in this business during 2005, *see id.* at 20:3, his continued operation of a business that is losing large amounts of money cannot readily be explained as a rational investment in future profits. His tax returns also indicate that, during 2002, he and his wife lost an amount on their rental properties greater than the amount of the contempt judgment. His hearing testimony indicates that the financial circumstances of these properties have not significantly improved. *See id.* at 23:22-4, 40:12-41:15. He has not explained to the Court why he should continue operating a loss-generating business and hold loss-generating properties rather than paying the contempt judgment.

Furthermore, the record indicates that Defendant Dzekciorius has been making payments on Defendant E-Poxy's debts since the Court issued the contempt judgment. *See id.* at 19:5-8. He has not explained why he has money to pay these non-judgment debts but not to pay the contempt judgment. In fact, at the hearing, he testified that he has treated the contempt judgment the same as every other liability he has. *See id.* at 53:16-19.

During the hearing, Defendant Dzekciorius testified as to properties that he and his wife

-11-

own jointly and to those that only his wife owns. He argues that the Court should not consider such properties in determining his ability to pay. However, the record raises questions as to whether he has handled these properties in good faith.

In addition, Plaintiff submitted an indenture, dated February 4, 1999, that indicates that Defendant Dzekciorius and his wife transferred property in Delmar, New York, to his wife for a consideration of $1. *See* Plaintiff's Exhibit "1." Plaintiff also submitted a warranty deed, dated September 15, 1987, that indicates that Defendant Dzekciorius purchased a condominium in Pinellas County, Florida, from Goldome Savings Bank, for a consideration of $10. *See* Plaintiff's Exhibit "3." Plaintiff then submitted an indenture, dated March 4, 1993, that indicates that Defendant Dzekciorius transferred the condominium to himself and his wife for $10 in consideration. *See* Plaintiff's Exhibit "4." At the hearing, Defendant Dzekciorius testified that the Florida condominium was his domicile. *See* Hearing Transcript 13:9, 51:13-14. However, in response to the Court's further questioning of him at the hearing, he testified that his legal address and residence was in New York State and that he had applied for a homestead exemption for the Florida condominium "[t]wo weeks ago or so." *See id.* at 51:15-25.

Despite this evidence, Defendants Dzekciorius and E-Poxy contend that the Court should not infer improper motive from his property transactions because they all preceded Plaintiff's filing of the instant action. However, it is common for a defendant to have forenotice of a lawsuit. Plaintiff has submitted a notice of federal tax lien that the Internal Revenue Service issued to Defendant E-Poxy on May 31, 2000. *See* Plaintiff's Exhibit "2." The lien identifies unpaid balances for several three-month periods. *See id.* at 3. Defendant E-Poxy had an unpaid balance of $12,124.64 for the earliest of these periods, the one ending on June 30, 1998. *See id.*

-12-

The lien also identified unpaid balances of $44,739.98 and $34,346.55 for the third and fourth quarters respectively of 1998. Although these amounts include interest and penalties, it seems unlikely that a business of the modest size of Defendant E-Poxy could fail to pay such significant amounts of federal tax without Defendant Dzekciorius having knowledge of that failure. Therefore, as of the time that Defendant Dzekciorius and his wife transferred the Delmar property to his wife, he should have been aware that Defendant E-Poxy faced a significant tax liability. Whether Defendant Dzekciorius anticipated the instant action when he effected this transfer, the evidence raises a significant presumption that he intended the transfer to protect his enjoyment of his and his wife's property from his and Defendant E-Poxy's creditors.

### D.   Summary

Defendants Dzekciorius and E-Poxy bore the burden of proving poverty or insolvency. Other than one tax return, one bill of sale, and one transcript of judgment, they have not submitted documents supporting their position.

Moreover, regardless of what Judge Munson told the parties, there is no indication in the record that the Court ever modified the contempt judgment. Although Defendants Dzekciorius and E-Poxy are correct that Plaintiff could have sought to execute the judgment, its failure to do so does not constitute an excuse for their failure to pay. The record indicates that Defendant Dzekciorius has sufficient funds in his IRAs to pay the contempt judgment. The record further suggests that he persists in loss-generating ventures. The record also indicates that he has made payment on other of his liabilities. Finally, the record raises serious questions about whether he intended his property transactions to frustrate his creditors.

Therefore, the Court finds that Defendants Dzekciorius and E-Poxy have not established that they are unable to pay their contempt judgment and that, in light of their disregard of that judgment, further sanctions are warranted. Accordingly, the Court concludes (1) that Plaintiff is entitled to its reasonable attorney's fees in bringing the instant request and (2) that Defendants Dzekciorius and E-Poxy are precluded from litigating their counterclaims before the Court until they pay the contempt judgment in full.

### IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants E-Poxy and Dzekciorius inform the Court and Plaintiff, in writing and within **fourteen (14) days** of the date of this Order, how they plan to pay the contempt judgment in full and interest thereon; and the Court further

**ORDERS** that Defendants E-Poxy and Dzekciorius pay Plaintiff the contempt judgment in full and interest thereon no later than **September 30, 2005**; and the Court further

**ORDERS** that Defendants E-Poxy's and Dzekciorius' counterclaims are stayed until they pay Plaintiff the contempt judgment in full and interest thereon; and the Court further

**ORDERS** that Defendants E-Poxy and Dzekciorius pay Plaintiff's reasonable attorney's fees in bringing the instant request; and the Court further

**ORDERS** that Plaintiff file with the Court, within **fourteen (14) days** of the date of this Order, evidence of its reasonable attorney's fees in bringing the instant request; and the Court further

**ORDERS** that Defendants E-Poxy and Dzekciorius file with the Court, within **fourteen (14) days** of the date that Plaintiff submits its evidence of its reasonable attorney's fees in bringing the instant request, their opposition, if any, thereto.

**IT IS SO ORDERED.**

Dated: August 17, 2005
       Syracuse, New York

                                              Frederick J. Scullin, Jr.
                                              Chief United States District Court Judge